**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1007**

———————

ADVANFORT COMPANY,

            Plaintiff – Appellant,

       v.

ZAMIL OFFSHORE SERVICES COMPANY; SAUDI PORTS AUTHORITY, a
foreign sovereign State,

            Defendants – Appellees.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at
Alexandria.  Leonie M. Brinkema, District Judge.  (1:23-cv-00906-LMB-IDD)

———————

Argued:  January 29, 2025                          Decided:  April 22, 2025

———————

Before KING and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by published opinion.  Judge King wrote the majority opinion, in which Senior
Judge Floyd joined.  Judge Thacker wrote a dissenting opinion.

———————

**ARGUED:**  Benjamin L. Hatch, MCGUIREWOODS, LLP, Norfolk, Virginia, for
Appellant.  Richmond Turner Moore, WILLIAMS & CONNOLLY LLP, Washington,
D.C., for Appellee.  **ON BRIEF:**  Clara Brillembourg, Washington, D.C., Peter A.
Sullivan, New York, New York, Andrew B. Loewenstein, Roseanna K. Loring, Matthew
F. Casassa, Boston, Massachusetts, Stephen Robin, FOLEY HOAG LLP, Denver,
Colorado, for Appellant.  John S. Williams, Nicholas A. Maricic, Janae N. Staicer,

WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee Zamil Offshore Services Company.

———————

KING, Circuit Judge:

In this appeal from the Eastern District of Virginia, plaintiff AdvanFort Company ("AdvanFort") challenges the district court's December 1, 2023 dismissal of its complaint against defendants Zamil Offshore Services Company ("Zamil") and the Saudi Ports Authority (the "Ports Authority") on the basis of forum non conveniens. *See AdvanFort Co. v. Zamil Offshore Servs. Co.*, 704 F. Supp. 3d 669 (E.D. Va. 2023). On appeal, AdvanFort primarily contends that the district court abused its discretion in determining that the Saudi Arabian judicial system is a more convenient forum to litigate its tort claims than AdvanFort's choice of forum, the Eastern District of Virginia. AdvanFort also argues that the court was procedurally barred from dismissing its complaint after the court had entered default against the Ports Authority for its failure to appear.

Having carefully assessed the record and the parties' briefs, and with the benefit of oral argument, we are satisfied that the district court did not err in its dismissal of AdvanFort's complaint on the basis of forum non conveniens. We therefore affirm the district court.

I.

A.

AdvanFort is a maritime security company headquartered in Fairfax County, Virginia, that deploys vessels to protect oil tankers and other vulnerable ships from the threats posed by piracy in international waters. In May 2012, AdvanFort deployed a former British Naval vessel, the *Seaman Guard Virginia* (the "*Virginia*"), to perform contracted

3

anti-piracy services for commercial fleets in the Red Sea. While the *Virginia* was sailing the Red Sea, AdvanFort determined that the vessel required routine maintenance and minor repairs.

AdvanFort sought repair services from defendant Zamil, a company that provided maritime construction and maintenance services from a leased shipyard (the "Jeddah Shipyard") at the Jeddah Islamic Port in Saudi Arabia. Zamil operated the Jeddah Shipyard pursuant to a lease from the Ports Authority, a Saudi government entity. On October 19, 2013, AdvanFort docked the *Virginia* at the Jeddah Shipyard in what it describes as "in good condition." At some point in October 2013, Zamil proposed that it would undertake electrical maintenance work on the *Virginia*, and AdvanFort agreed. On October 27, 2013 — while the *Virginia* was undergoing those electrical repairs — a fire broke out below the vessel's deck.

AdvanFort believed that the fire aboard the *Virginia* was caused by Zamil's repair personnel, and thus, in 2014, filed suit against Zamil and the Ports Authority in a Saudi Arabian court. Zamil filed a countersuit against AdvanFort shortly thereafter. Three years later — in April 2017 — the Saudi court issued a judgment dismissing AdvanFort's claims and awarding Zamil partial damages on its counterclaims. All the while, the *Virginia* remained docked at the Jeddah Shipyard.

In early 2022, Zamil transferred the *Virginia* to a storage yard located within the Jeddah Shipyard, claiming that the vessel was at risk of sinking, thereby creating an environmental or safety hazard. In June 2022, Zamil informed AdvanFort that its lease agreement with the Ports Authority was ending and that it would dispose of the *Virginia* if

4

AdvanFort did not retrieve the vessel. AdvanFort then dispatched a marine expert from the United States to inspect the *Virginia*. The inspection revealed that the *Virginia* had been stripped bare — a measure which Zamil claimed was necessary to facilitate the transfer of the *Virginia* to its storage yard. In addition to the removal of the ship's engines, steering equipment, and anchors, the inspection observed that the Jeddah Shipyard had left the *Virginia*'s windows and hatches open, causing the ship to rust.

B.

1.

On July 12, 2023, AdvanFort filed a five-count complaint in the district court for the Eastern District of Virginia against Zamil and the Ports Authority for conversion, breach of bailment, negligence, and gross negligence. It sought damages for the loss of the *Virginia*, plus damages for the loss of profits resulting from AdvanFort's inability to deploy the vessel due to its unserviceable condition.

AdvanFort properly served process on the Ports Authority, a subdivision of the Saudi Arabian government, pursuant to the Foreign Sovereign Immunities Act. *See* 28 U.S.C. § 1608.[1] To effectuate service of process, AdvanFort requested that the Clerk of Court mail a service package containing the summons, complaint, and notice of suit to the

---

[1] Section 1608 of the Foreign Sovereign Immunities Act requires "[s]ervice in the courts of the United States . . . upon a foreign state or political subdivision of a foreign state" be made by "sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the head of the ministry of foreign affairs of the foreign state concerned." *See* 28 U.S.C. §§ 1608(a), (a)(3).

5

head of Saudi Arabia's Ministry of Foreign Affairs in Riyadh, Saudi Arabia, on September 11, 2023. The service package was delivered to the Ministry of Foreign Affairs on September 25, 2023, where it was accepted and signed for by an authorized representative of the Ministry.[2]

Zamil waived service on September 29, 2023. It then moved to dismiss AdvanFort's complaint in the Eastern District of Virginia on the grounds of forum non conveniens and for lack of personal jurisdiction, contending that the Saudi courts are a more convenient forum to litigate AdvanFort's claims. On October 30, 2023, AdvanFort opposed Zamil's motion and moved for limited discovery relating to forum non conveniens and personal jurisdiction.

In opposition to Zamil's motion to dismiss, AdvanFort primarily argued that the Saudi courts are unavailable and inadequate. In doing so, it contended that the Saudi courts are neither independent nor impartial, and that no Saudi tribunal was available for it to litigate its claims against the Ports Authority and Zamil in a single action. To support its claims of inadequacy, AdvanFort cited various publicly sourced documents and tendered the opinion of an expert witness to argue that the Saudi courts would subject AdvanFort to

---

[2] Service of process under 28 U.S.C. § 1608(a)(3) is deemed made "as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed." *See* 28 U.S.C. § 1608(c)(2). Pursuant to § 1608, service on the Ports Authority occurred on September 25, 2023, when the service package was signed for at the Ministry of Foreign Affairs. *See Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1059 (2019) (explaining that "service is deemed to have occurred on the date shown on a document signed by the person who received it from the carrier").

unfair treatment and deprive it of all remedies.  Those arguments included, inter alia, that lawyers and witnesses face retribution for supporting lawsuits opposing the Saudi government or its allied families; that judges, lawyers, and critics of the Saudi justice system have been detained or tortured; that the Saudi government is currently prosecuting multiple judges for "high treason," on the basis that those judges have issued judgments perceived as adverse to the government; and that witnesses are treated unfairly or discredited based on their gender or religion.

Although Zamil moved to dismiss AdvanFort's complaint, the Ports Authority failed to appear in the Eastern District of Virginia within the 60-day time limit mandated by the Foreign Sovereign Immunities Act.  *See* 28 U.S.C. § 1608(d).[3]  On November 30, 2023, AdvanFort requested entry of default against the Ports Authority for its failure to respond to the complaint or otherwise appear.

2.

On December 1, 2023, the district court conducted a hearing on Zamil's motion to dismiss.  Before turning to the merits of Zamil's motion, the court acknowledged that the Ports Authority had failed to file a responsive pleading or otherwise appear in the proceedings, and was therefore in default.  Later that day, the court directed the Clerk to file an entry of default against the Ports Authority, pursuant to Federal Rule of Civil

---

[3] Section 1608(d) of Title 28 requires that "[i]n any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section."

Procedure 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.").

The district court then informed the parties that it intended to dismiss AdvanFort's complaint on the basis of forum non conveniens. The court thereafter denied AdvanFort's motion for limited discovery and dismissed its claims against Zamil and the defaulted Ports Authority. Later that day, the court filed its Memorandum Opinion dismissing AdvanFort's complaint, concluding that the Saudi courts were available, adequate, and more convenient in light of public and private interests involved, explaining that all the relevant events had occurred in Saudi Arabia and all relevant evidence was located there.

In rendering its forum non conveniens decision, the district court first rejected AdvanFort's availability contentions, determining that "[n]either of AdvanFort's arguments preclude the [c]ourt from finding that Saudi courts are available to hear" the action "[m]erely because the Ports Authority has not yet appeared" before the Eastern Virginia court. *See AdvanFort*, 704 F. Supp. 3d at 675-76. It also rejected AdvanFort's argument that the Saudi courts were unavailable because AdvanFort may be required to pursue its claims against the Ports Authority and Zamil before separate tribunals — that is, the Saudi Board of Grievances and the Saudi Commercial Court, respectively. Because dismissal "would not force AdvanFort to litigate in two different countries" — and because together those separate tribunals possess jurisdiction to hear and resolve AdvanFort's claims — the court found that "the Saudi courts provide[d] an available forum to resolve AdvanFort's claims against both defendants." *Id.* at 676.

8

The district court then turned to and assessed the adequacy of the Saudi courts.  After considering AdvanFort's arguments regarding corrupt practices in the Saudi courts, the court determined that those assertions were generalized allegations that were insufficient to support the proposition that the Saudi courts were inadequate.  To illustrate that the Saudi courts were capable of fairly adjudicating AdvanFort's claims, the court pointed to and emphasized the parties' prior litigation in Saudi Arabia, observing that "although the [Saudi] court dismissed AdvanFort's claims, it awarded Zamil . . . less than one-third" of the repair fees Zamil had sought in its countersuit.  *See AdvanFort*, 704 F. Supp. 3d at 676-77.

The district court then turned to the public and private interests at stake in the litigation, ultimately concluding that both weighed in favor of dismissing on the basis of forum non conveniens.  The court explained that the private interest factors favored litigating the dispute in the Saudi courts.  Although the court recognized that AdvanFort had brought suit in its home forum of Virginia, it nevertheless "partially discounted" AdvanFort's citizenship in the United States and the presumptive effect of its choice of forum because AdvanFort had elected to do business abroad in Saudi Arabia.  *See AdvanFort*, 704 F. Supp. 3d at 678.  And "[b]ecause the relevant conduct occurred in Saudi Arabia" — not the United States — and because AdvanFort was not in Saudi Arabia when the alleged damage to the vessel occurred," the court recognized that "the parties will need to rely on physical and testimonial evidence" located in Saudi Arabia.  *Id.* at 678.  The court also explained that, given the claims at issue, it was likely that the litigation would

9

involve third-party witnesses who would not be under the control of either party and over whom a Virginia court would lack authority to compel testimony.

The district court similarly found that the public interest factors weighed in favor of litigating AdvanFort's claims in Saudi Arabia. The court explained that, at bottom, AdvanFort's "action is about a vessel in Saudi Arabia that was allegedly damaged by a Saudi company, with Saudi employees, in a Saudi shipyard in Saudi Arabia." *See AdvanFort*, 704 F. Supp. 3d at 679. The Commonwealth of Virginia, therefore, had "little local interest in a case involving an alleged tort arising from performance of a contract overseas." *Id.* (internal quotation marks omitted). And, in any event, the court would need to apply Saudi law to AdvanFort's claims under Virginia's choice of law statute. *Id.* (explaining that Virginia's choice of law statute mandates that a "court must apply the law of the place where the last event necessary to make an action liable for an alleged tort takes place").

In sum, after assessing the threshold questions of availability and adequacy, and then weighing the public and private interests at stake in the matter, the district court determined that Saudi Arabia was a more convenient forum for AdvanFort's litigation. It therefore dismissed AdvanFort's complaint on the basis of forum non conveniens.

AdvanFort has timely appealed the district court's dismissal of its complaint, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review a district court's dismissal based on the doctrine of forum non conveniens for abuse of discretion, "disturbing its decision only when it failed to consider a material factor or clearly erred in evaluating the factors before it, or did not hold the defendants to their burden of persuasion on all elements of the forum non conveniens analysis." *See Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010) (internal quotation marks and alterations omitted). "[A]bsent a 'clear abuse of discretion,' the district court's 'decision deserves substantial deference.'" *See dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 136 (4th Cir. 2023) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

III.

On appeal, AdvanFort maintains that the district court abused its discretion in dismissing the AdvanFort complaint on the basis of forum non conveniens, and thus argues that these proceedings should be litigated in the Eastern District of Virginia.

A federal court has the discretion to dismiss a case on the ground of forum non conveniens where another forum is more appropriate for adjudicating a dispute, considering "the factual and legal issues of the underlying dispute." *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (internal quotation marks omitted). The forum non conveniens doctrine requires a court to consider whether an alternative forum is "available" or "adequate" and, if so, whether the alternative forum is "more convenient in light of the public and private interests involved." *See Jiali Tang*

*v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011). The moving party bears the burden of showing that an adequate alternative forum exists. *See Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010).

And as we have recited previously, a forum non conveniens determination is "committed to the sound discretion of the trial court," and we therefore afford its decision substantial deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). We discern no abuse of discretion in the district court's ruling that its forum non conveniens inquiry in this matter favors a Saudi Arabian forum, and we therefore affirm the dismissal of AdvanFort's claims against Zamil and the Ports Authority on that basis, without addressing the parties' contentions regarding personal jurisdiction.[4]

### A.

Before assessing the district court's dismissal on the merits, we must address AdvanFort's claim that the court was precluded from dismissing its complaint because the Ports Authority was in default. As AdvanFort asserts, an entry of default limits the defenses available to the defaulting defendant and, thus, the Ports Authority was not

---

[4] The district court declined to reach and resolve Zamil's arguments regarding a lack of personal jurisdiction over the defendants after rendering its decision to dismiss AdvanFort's complaint on the basis of forum non conveniens. As the Supreme Court has held, "[a] district court . . . may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *See Sinochem*, 549 U.S. at 422. In light of the district court's decision to dismiss AdvanFort's complaint on the basis of forum non conveniens, we decline to reach the issues regarding personal jurisdiction raised on appeal.

12

entitled to raise or benefit from its codefendant Zamil's assertion of the procedural defense of forum non conveniens. We are constrained to disagree.

As we have explained, "federal courts possess certain implied or inherent powers that 'are necessary to the exercise of all others.'" *See United States v. Moussaoui*, 483 F.3d 220, 236 (4th Cir. 2007) (quoting *United States v. Hudson*, 11 U.S. (7 Cranch) 32, 34 (1812)). More specifically, we have recognized that a district court has "the inherent authority to control various aspects of the cases *before that court*," including the ability to "dismiss a lawsuit sua sponte . . . on [the] grounds of forum non conveniens." *Id.* at 236-37; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). With those principles in mind, we discern no reasonable basis for us to limit the district court's inherent authority to dismiss this action on the basis of forum non conveniens, simply because the Ports Authority failed to move for dismissal.

Moreover, our Court has adhered to the longstanding principle that "if the suit should be decided against the complainant on the merits, the bill will be dismissed as to all the defendants alike — the defaulter as well as the others." *See Frow v. De La Vega*, 82 U.S. 552, 554 (1872). We have thus recognized that where "a defending party establishes that [a] plaintiff has no cause of action or present right of recovery, this defense generally inures also to the benefit of a defaulting defendant." *See U.S. ex rel. Hudson v. Peerless Ins. Co.*, 374 F.2d 942, 945 (4th Cir. 1967) (internal citations omitted); *see also, e.g.*, *Equip. Fin. Grp., Inc. v. Traverse Comput. Brokers*, 973 F.2d 345, 348 (4th Cir. 1992) (explaining that when action against defaulting codefendant "was ultimately dismissed, it is not vulnerable to judgment"). And although our Court has not applied this principle in the

13

circumstances presented here, we see no reason to ignore our precedent merely because the contested decision to dispose of AdvanFort's action was based on "a non-merits ground for dismissal." *See Sinochem*, 549 U.S. at 432 (explaining that a dismissal on the basis of forum non conveniens "is a determination that the merits should be adjudicated elsewhere").

Indeed, it would be "absurd" and "unreasonable to hold" that a district court is precluded from dismissing an action against a defaulting codefendant "where the court is satisfied from the proofs offered by the other" that a more convenient forum exists. *See Frow*, 82 U.S. at 554. As made clear by its decision, the district court was satisfied that Zamil had satisfied its burden of establishing an available and adequate alternative forum as to both defendants. At the outset of its decision — and after recognizing that the Ports Authority was in default — the court concluded that its forum non conveniens analysis would equally apply to both Zamil and the Ports Authority. *See AdvanFort Co. v. Zamil Offshore Servs. Co.*, 704 F. Supp. 3d 669, 675 (E.D. Va. 2023). The court then carefully analyzed the threshold factors of availability and adequacy with respect to Zamil and the Ports Authority, ultimately concluding that those factors weighed in favor of AdvanFort litigating its claims against both defendants in the Saudi courts. *E.g.*, *id.* at 675-77. We therefore cannot say that the court erred in applying its analysis equally to each defendant, or in ruling that Zamil had satisfied its burden of establishing that the Saudi courts are the more convenient forum.

Accordingly, we decline to adopt AdvanFort's view that the district court erred in dismissing the claims against the defaulted Ports Authority.

14

B.

Having determined that the district court did not err in dismissing AdvanFort's complaint when the Ports Authority was in default, we will turn to and assess the district court's forum non conveniens ruling. AdvanFort contends that the district court committed reversible error in ruling that the Saudi courts are an available and adequate forum. It also contends that the district court erred in the final step of its forum non conveniens inquiry by improperly balancing the public and private interest factors at stake in this litigation. These errors, AdvanFort maintains, amount to an abuse of the court's discretion.

1.

"At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternate forum." *See Piper Aircraft Co.*, 454 U.S. at 254 n.22 (internal quotation marks omitted). "Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Id.* (citing *Gulf Oil Corp.*, 330 at 506-07). And, importantly, "the alternate forum must be available as to *all defendants*" — that is, all parties must come under the jurisdiction of the foreign forum. *See Galustian*, 591 F.3d at 731 (citing *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 221 (5th Cir. 2000)).

As the district court explained, AdvanFort "does not contest that Saudi courts would have jurisdiction over both defendants." *See AdvanFort*, 704 F. Supp. 3d at 675. Rather, AdvanFort claims that the Saudi courts are rendered unavailable because it may be forced to bring its claims against Zamil and the Ports Authority in two different tribunals, both located in the city of Jeddah: The Commercial Court and the Board of Grievances,

15

respectively.[5]    The Board of Grievances, as AdvanFort argues, exercises "exclusive jurisdiction over administrative cases and lawsuits filed against government bodies" like the Ports Authority.  *See* Appellant's Br. 27.  And AdvanFort maintains that "the Ports Authority cannot be brought before the Commercial Court," where its claims against Zamil would be litigated.  *Id.* at 28.

AdvanFort thus urges us to hold that a defendant moving for dismissal on the basis of forum non conveniens bears the burden of identifying a single available alternative forum.  Our precedent, however, does not go so far as to demand that a defendant must identify a *single* tribunal in a foreign jurisdiction where all claims brought by a plaintiff may be heard and resolved.  Rather, we require only that a defendant provide more than generalized evidence to demonstrate that "the alternative forum is better," i.e., available. *See Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 316 (4th Cir. 1984) (explaining that letter suggesting Maryland physician "will consent to personal jurisdiction in Australia" was insufficient to establish available alternative forum); *see also Galustian*, 591 F.3d at 730-31 (vacating forum non conveniens dismissal as premature where "no evidence was proffered regarding the availability of the forum" as to codefendant).  And although we have recognized that a defendant can meet its availability burden by "indicat[ing] which court provides the alternative forum," instead of merely "suggest[ing] the *country*," we

---

[5] AdvanFort's expert witness observed that "[i]t appears" from filings in the parties' prior Saudi litigation that "the Commercial Court in these cases was located within the Board of Grievances, as the Board of Grievances address is listed. Though in the same location, the two venues are legally distinct." *See* J.A. 239 n.34.

16

have not required anything beyond a showing that all parties are "amenable to process in the other jurisdiction." *See Kontoulas*, 745 F.2d at 316; *Piper Aircraft Co.*, 454 U.S. at 254 n.22.

In light of our precedent, we cannot say that the district court's availability analysis was improper — particularly where, as the court recognized, "the parties' Saudi Arabian attorneys dispute whether AdvanFort would have to sue each defendant in a different Saudi tribunal." *See AdvanFort*, 704 F. Supp. 3d at 676. Despite this disagreement, this was not a case where "the record before the court was so fragmentary that it [was] impossible to make a sound determination." *See El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677 (D.C. Cir. 1996) (explaining that defendants "must provide enough information to enable the District Court to evaluate alternative forum") (internal citations omitted). Indeed, our review of the record demonstrates that Zamil provided detailed information in its expert's affidavit regarding the availability of the Saudi courts. *See, e.g.*, J.A. 323-24 (explaining that a claimant is allowed "to request that the [Board of Grievances] involve another party in the case"). Only after reviewing the evidence did the court decide to credit the opinion of Zamil's Saudi legal expert, who had explained that the Board of Grievances has the discretion to hear claims against both the Ports Authority and Zamil. We discern no instance in the court's analysis demonstrating that it "did not hold the defendants to their burden of persuasion" on this issue. *See Galustian*, 591 F.3d at 731.

Moreover, the district court correctly recognized that, in circumstances where "courts have denied motions to dismiss for forum non conveniens," those courts did so only "when dismissing the actions would split claims against domestic defendants from

17

foreign defendants, thereby forcing plaintiffs to litigate in two different countries." *See AdvanFort*, 704 F. Supp. 3d at 676 (explaining that AdvanFort "cite[d] inapposite cases").[6] The court then reasoned that — unlike in the decisions it reviewed — "dismissing this action would not force AdvanFort to litigate in two different countries." *Id.* "[A]nd because together the Board of Grievances and the Commercial Court have jurisdiction to hear AdvanFort's claims against defendants," the Saudi courts are available "to resolve AdvanFort's claims against both defendants." *Id.* We cannot say, therefore, that the court's ruling constituted an abuse of its discretion. We thus agree that the Saudi courts provide an available alternative forum to litigate AdvanFort's claims.

2.

AdvanFort next argues that the district court erred in evaluating the Saudi courts' adequacy as an alternative forum. Specifically, AdvanFort contends that the court misconstrued its claims of judicial corruption and unfairness as "generalized" or "anecdotal," thereby disregarding the detailed evidence from its expert witness supporting those claims. *See AdvanFort*, 704 F. Supp. 3d at 676-78. We find no merit to AdvanFort's contentions.

---

[6] Our sister circuits appear to have routinely declined to find that an available forum exists in instances where a dismissal for forum non conveniens would result in the parties being "splintered" across different countries. *See DIRTT Env't Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 554 (10th Cir. 2023); *see also Associacao Brasileira de Medicina de Grupo v. Stryker Corp.*, 891 F.3d 615, 621 (6th Cir. 2018); *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 867 (7th Cir. 2015).

As with the other forum non conveniens factors, the burden is on the defendant to demonstrate that a foreign forum is adequate — or, in other words, that "all parties can come within that forum's jurisdiction, and the parties will not be deprived of all remedies or treated unfairly." *See Tang*, 656 F.3d at 249. We recognize, however, that "rare circumstances" exist "where the remedy offered by the other forum is clearly unsatisfactory." *See Piper Aircraft Co.*, 454 U.S. at 254 n.22. In those circumstances, "the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.*

Initially, we observe that AdvanFort does not contest that the Saudi courts permit the litigation of this dispute. AdvanFort instead argues that the Saudi legal system is corrupt and thus incapable of adjudicating its dispute fairly. Although allegations such as those AdvanFort advances are not to be taken lightly, we must emphasize that an adequate forum need not be a perfect forum. *See, e.g.*, *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 205 (finding adequate foreign forum despite differences in limitation-of-liability process).

Indeed, courts have recognized that a forum is not rendered inadequate merely because it applies less favorable substantive law, utilizes different adjudicatory procedures, or because of general allegations of corruption in the forum's judicial system. *See Compania Naviera*, 569 F.3d at 202 ("[A] difference in the law in the two forums . . . is not sufficient to bar application of the *forum non conveniens* doctrine."); *see also Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991); *Blanco v. Blanco Indus. de Venezuela*, 997 F.2d 974, 981-82 (2d Cir. 1993). And courts should be hesitant

19

"to pass value judgments on the adequacy of justice and the integrity" of a foreign forum's judicial system based only on "conclusory" allegations or "sweeping generalizations." *See In re Arbitration Between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine.*, 311 F.3d 488, 499 (2d Cir. 2002). As such, "anecdotal evidence of corruption and delay provides [an] insufficient basis" for concluding that a foreign forum is inadequate. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006). Plaintiffs must instead demonstrate that they would face serious obstacles to conducting litigation, such as "extreme amounts of partiality or inefficiency," or "a complete absence of due process or an inability of the forum to provide substantial justice to the parties." *See Leon v. Million Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001); *Monegasque*, 311 F.3d at 499.

Our review of the record in this matter shows that the district court did not err in determining that AdvanFort's allegations were generalized or anecdotal, and therefore insufficient to sustain its claims that the Saudi courts are incapable of adjudicating its dispute. In assessing those allegations, the court reviewed numerous cases from other jurisdictions where plaintiffs advanced similar claims. Although AdvanFort argues that the court's reliance on these cases — which it asserts are inapposite — is erroneous, we are satisfied that the court's thorough review of AdvanFort's allegations was both consistent and reasonable, considering the rulings of other courts and the nature of AdvanFort's claims.

We also identify no error in the district court's weighing of AdvanFort's prior Saudi litigation. *See AdvanFort*, 704 F. Supp. 3d at 676-77. The court was correct to point out

20

that the reduction of damages totalling nearly one-third of those sought by Zamil in its countersuit "misaligns" with AdvanFort's claims that "the Saudi judicial system, as a whole, is corrupt and thus incapable of adjudicating disputes." *Id.* at 676. We therefore agree with the court that AdvanFort's allegations are not sufficient to sustain a determination that the Saudi judicial system is so corrupt or biased as to be an inadequate forum for litigating AdvanFort's complaint.

3.

"If the alternative forum is both available and adequate, the district court must weigh the public and private interest factors." *See Tang*, 656 F.3d at 249. That is, it must evaluate "the balance of conveniences" to determine if a "trial in the chosen forum would be unnecessarily burdensome for the defendant or the court." *See Piper Aircraft Co.*, 454 U.S. at 256 n.23. Before engaging with its analysis of the public and private interest factors, however, a court "must establish the appropriate level of deference owing to the [plaintiff's] choice of forum." *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 802 (4th Cir. 2013). It is with this threshold inquiry that AdvanFort contends the district court initially erred by failing to determine the proper level of deference given to AdvanFort's choice of forum, the Eastern District of Virginia. It argues that, as a Virginia corporation bringing its claims in a Virginia court, it is entitled to increased deference.

AdvanFort is correct that ordinarily, "a citizen plaintiff's choice of forum is entitled to even greater deference when the plaintiff chooses her 'home forum.'" *See DiFederico*, 714 F.3d at 802-03 (quoting *Piper Aircraft Co.*, 454 U.S. at 255-56). But we have recognized that in circumstances where "the plaintiff is a corporation doing business

21

abroad," it "should expect to litigate in foreign courts." *Id.* at 807. Indeed, where an American corporation engaged in "extensive foreign business . . . brings an action for injury occurring in a foreign country, many courts have partially discounted the plaintiff's United States citizenship." *Id.* (first quoting *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991); and then citing *Mizokami Bros. of Ariz., Inc. v. Baychem Corp.*, 556 F.2d 975, 978 (9th Cir. 1977)). In determining the deference applied to a plaintiff's choice of forum, we have recognized that a court should demonstrate through "affirmative evidence that [it] did in fact consider this heightened standard when it conducted its analysis." *Id.* at 803.

And that is precisely what the district court did here: Rather than merely implying that it gave less deference to AdvanFort's choice of forum, the district court explicitly set forth its reasoning to "partially discount" the deference afforded to AdvanFort. *See AdvanFort*, 704 F. Supp. 3d at 678; *cf. DiFederico*, 714 F.3d at 803 (explaining that court's failure to provide "affirmative evidence" was abuse of discretion). The district court first explained that, although AdvanFort sued in its home forum, it had "elected to do business with Zamil in Saudi Arabia" and therefore "should expect to litigate in foreign courts." *See AdvanFort*, 704 F. Supp. 3d at 678. And so the court "partially discount[ed] AdvanFort's United States Citizenship." *Id.* We cannot say, therefore, that the court erred in applying our precedent in *DiFederico*, or by partially discounting the deference owed to AdvanFort's choice of forum.

After establishing the proper level of deference, the district court turned to evaluating the private interest factors at stake in this dispute. As we have acknowledged,

22

"the forum non conveniens doctrine is ultimately concerned with convenience, not simply the locus of alleged wrongful conduct." *See Tang*, 656 F.3d at 252. To guide this inquiry, the Supreme Court has explained that a court should consider private interest factors such as the "relative ease of access to sources of proof," the "availability of compulsory process" and the "cost of obtaining the attendance" of witnesses, the possibility of viewing the premises, plus "all other practical problems that make trial of a case easy, expeditious and inexpensive." *See Piper Aircraft Co.*, 454 U.S. at 241 n.6; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). AdvanFort, however, contends that the court failed in its consideration of those factors. We disagree.

We are satisfied that the district court properly exercised its discretion in weighing the relevant factors, most notably by recognizing that "the relevant conduct occurred in Saudi Arabia," and thus "the parties will need to rely on physical and testimonial evidence located in Saudi Arabia, including Jeddah Shipyard employees, AdvanFort's marine expert, and physical evidence such as the vessel which remains in Saudi Arabia." *See AdvanFort*, 704 F. Supp. 3d at 678. The court also observed that it lacks the authority to compel the attendance of Saudi witnesses, which would "greatly undermin[e] a fact-finding effort" in Virginia. *See Tang*, 656 F.3d at 252. Moreover, because AdvanFort's claims "involves events spread over ten years at a Saudi Arabian shipyard — including allegations that Zamil allowed the vessel to be looted by third parties," the court found it "reasonable to expect that litigation of the case will involve third-party witnesses who are not under either party's control." *See AdvanFort*, 704 F. Supp. 3d at 678 (internal citations and

23

alterations omitted). We discern no error with the court's findings. In sum, the court was well within its discretion in concluding that the private interest factors favored dismissal.

The same is true of the district court's assessment of the public interest factors in this case. We have explained that "pertinent public interest factors are the local interest in having localized controversies decided at home; the avoidance of complex comparative law issues; and the unfairness of burdening citizens in an unrelated forum with jury duty." *See Tang*, 656 F.3d at 252 (citing *Piper Aircraft Co.*, 454 U.S. at 241 n.6). Because "this is a case about a ship in Saudi Arabia that was allegedly damaged by a Saudi company, in a shipyard in Saudi Arabia, pursuant to a contract to perform services in Saudi Arabia," the court correctly reasoned that the Saudi courts "seemingly would have a significant interest in hearing a dispute about a contract performed in Saudi Arabia." *See AdvanFort*, 704 F. Supp. 3d at 679. And it is true that, as the court recognized, the Commonwealth of Virginia's interests in this case "are minimal." *Id.*

We thus agree that, in the circumstances presented by this dispute — specifically, "where the controversy's contacts with the United States pale in comparison" to its foreign contacts — "jury duty ought not to be imposed upon the people of the United States nor should United States courts be clogged." *See AdvanFort*, 704 F. Supp. 3d at 679 (internal quotation marks omitted). Virginia residents "should therefore not be saddled with resolving" AdvanFort's dispute. *See Tang*, 656 F.3d at 252.

Moreover, there is little doubt that the court would likely "encounter complex issues" of Saudi Arabian law given the circumstances presented by AdvanFort's claims. *See AdvanFort*, 704 F. Supp. 3d at 679. Because "[t]he forum non conveniens doctrine

24

exists largely to avoid such comparative law problems," we agree that dismissal is appropriate for that reason as well. *See Tang*, 656 F.3d at 252; *see also Piper Aircraft Co.,* 454 U.S. at 251 ("The doctrine of forum non conveniens . . . is designed in part to help courts avoid conducting complex exercises in comparative law."). Put simply, the district court did not abuse its discretion by concluding that the public interest factors favor Saudi Arabia as the most appropriate forum.

## C.

AdvanFort's final contention challenges the district court's denial of limited discovery regarding what it characterizes as "critical factual disputes relevant to forum non conveniens." *See* Appellant's Br. 62. More specifically, it sought discovery on the adequacy or fairness of the Saudi courts, as well as the location and language of witnesses and evidence.

Notably, the parties each presented detailed expert affidavits supporting their positions regarding the availability and adequacy of the Saudi courts. Those affidavits were a proper basis for resolution by the district court of Zamil's motion to dismiss because, as the Supreme Court has made clear, a forum non conveniens inquiry "does not necessarily require extensive investigation, and may be resolved on affidavits presented by the parties." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988).

Moreover, Zamil — which had the burden of showing that the Saudi courts were a more convenient forum — presented evidence regarding its witnesses and otherwise adequately demonstrated that the interests of convenience weighed in its favor. The district court, therefore, had "enough information to enable [it] to balance the parties' interests" on

25

those issues without ordering further discovery. *See Piper Aircraft Co.*, 454 U.S. at 258. In these circumstances, we are satisfied that there was no abuse of discretion in the court's decision to deny additional discovery, particularly where "[r]equiring extensive investigation would defeat the purpose of [the] motion." *Id.*

## IV.

Pursuant to the foregoing, the district court's dismissal of AdvanFort's complaint on the basis of the doctrine of forum non conveniens is affirmed.

*AFFIRMED*

THACKER, Circuit Judge, dissenting:

As an initial matter, I agree with the majority that the district court was not precluded from granting a forum non conveniens dismissal by virtue of the Ports Authority's default. But, as to the forum non conveniens analysis, I depart from the majority on a single -- but dispositive -- issue. Dismissal for forum non conveniens requires the existence of one alternate, adequate, and available forum. Because Saudi Arabia would require the case be split between two courts, I would vacate the forum non conveniens dismissal. Therefore, I respectfully dissent.

As the majority explains, "[a]t the outset of any forum non conveniens inquiry, the court must determine whether there exists *an* alternate *forum*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) (emphases supplied). "*[T]he* alternate *forum* must be available as to all defendants." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010) (citation omitted) (emphases supplied). We have explained that a party seeking to demonstrate the availability of an alternative forum must "indicate what *court* provides the alternative forum" rather than "only suggest[ing] the *country*." *Kontoulas v. A.H. Robins Co., Inc.*, 745 F.2d 312, 316 (4th Cir. 1984) (emphases in original).

Here, Zamil argues that Saudi Arabia is an adequate and available alternative forum because "Saudi courts would have jurisdiction over both defendants." Ante at 15 (citation omitted). But, as we have indicated, simply naming the *country* is inadequate. As AdvanFort's Saudi legal expert explained, the Saudi Board of Grievances is the court with "exclusive jurisdictions over administrative cases and lawsuits filed against government

27

bodies" like the Ports Authority.  J.A. 242.  The Board of Grievances does not have authority over commercial entities like Zamil.  AdvanFort's Saudi legal expert explained:

> Thus, if litigated in Saudi Arabia, AdvanFort's claims against the Saudi Ports Authority would have to be litigated before the Board of Grievances. However, the Board of Grievances' jurisdiction does not extend to commercial cases brought against non-government parties. Consequently, since AdvanFort's claims concern conversion, breach of bailment, negligence, and gross negligence, those claims against Zamil would have to be litigated before a different court: the Commercial Court. There is no forum in Saudi Arabia where AdvanFort could bring its claims against both Defendants.

J.A. 242.*

Zamil's legal expert did not meaningfully refute this claim.  Instead, he offered only that the Board of Grievances "allows a claimant that has submitted a lawsuit" before it "to request that [it] involve another party in the case provided that the conditions required by the relevant law are met."  J.A. 323.  Thus, Zamil's expert claimed that AdvanFort's evaluation was "not entirely accurate" because the Board of Grievances could decide to allow the claims against Zamil to be heard there too.  J.A. 324.  Notably, however, Zamil's expert did not explain what the "conditions required by the relevant law" are, nor did he provide an analysis or opinion as to whether those requirements could be satisfied here.

The majority posits that "[o]ur precedent . . . does not go so far as to demand that a defendant must identify a *single* tribunal in a foreign jurisdiction where all claims brought by a plaintiff may be heard and resolved."  Ante at 16.  I disagree.  We have explicitly

---

* Citations to the "J.A." refer to the Joint Appendix filed by the parties to this appeal.

28

recognized that it is insufficient for a party seeking forum non conveniens to identify only the country, rather than the specific court that would serve as the forum. *See Kontoulas*, 745 F.2d at 316. And as one of our sister circuits has explained, forum non conveniens "is not available as a tool to split or bifurcate cases" as that "fundamentally contradicts the 'central purpose' of *forum non conveniens* because it only increases the possibility of overlapping, piecemeal litigation that is inherently inconvenient for both the parties and the courts." *DIRTT Env't Solutions, Inc. v. Falkbuilt Ltd.*, 65 F.4th 547, 555 (10th Cir. 2023) (citations omitted).

Here, requiring AdvanFort to litigate its claims against Zamil and the Ports Authority in separate Saudi courts creates piecemeal litigation and increases the possibility of overlapping and inconsistent judgments. And it forces AdvanFort to incur the costs and inconvenience associated with litigating not one, but two, cases in separate tribunals.

Given all of this, I would conclude that forum non conveniens is unavailable in this case because there is not a *single* alternative forum available to all defendants. I would vacate the district court's dismissal and allow AdvanFort to proceed on its claims in its home forum, the Eastern District of Virginia.

29